Case number 12-3759 Issan Bazzi v. Eric Holder Jr. Oral argument, 15 minutes for the petitioner, 15 minutes for the respondent by telephone. Ms. Liss for the petitioner. May it please the court, my name is Maris Liss. I would like to reserve 3 minutes for rebuttal. You may. I'm so nervous. Give me one second to get my act together. I lost my place and I haven't even started. Here we go. I actually have two cases on today's docket. I'm also the attorney for Arabieva. But that one's on briefs, right? Yes. There's a rumor that the celebrities Brad Pitt and Angelina Jolie may have secretly gotten married in the last week. But for the purposes of this argument, I will assume that they are not married and that Angelina Jolie is a foreigner. My argument has four points and I plan to mostly discuss point one, unless you have other ideas. First, the board gave no legal basis to support the notion that sham divorce is a valid concept, despite the fact that I clearly raised that argument. It's an interesting case. I've never quite seen something like it. But I get the point, sham divorce, those words aren't in the statute, so that seems to be helpful. But fraud is in the statute, right? So why not just forget the phrase sham divorce and just ignore it and just say the problem from the government's perspective was fraud? Because I think that what I'm arguing is that there could be some kind of indicia of fraud that exists. I don't conceive that or something. But, well, marriage fraud has special implications. There's a statute that Congress wrote. They explain what it is. They said that a person has a permanent bar if they are found to have done marriage fraud. And then there were regulations issued saying how you can prove that a marriage is real. So there's instructions for applicants. David, counsel, in this case, am I right that the key word is not sham or divorce or even, to me, fraud, because fraud, you're right, has to apply to something. The phrase is unmarried person. So in a sense, isn't the question, was there fraud in claiming to be unmarried? It doesn't define divorce, but the word used is unmarried. Clearly they were married. And so the question to me, and tell me if conceptually I'm wrong, is how legitimate was his unmarriage? You don't have to call it a divorce. How did he obtain the status of being unmarried? There's no supposition that there was a legal defect in the divorce or that the divorce is invalid. The judge, I think, at AR 103 specifically said that the divorce is a valid divorce. But then he said that even though it's a valid divorce, it's a sham because of the different, you know, because of the statement of Kathy Bosley and other agents. Would you agree with me that we can examine and the authorities, the government can examine the meaning of unmarried? A person arrives, asks for a visa, for a status on the proposition that I am unmarried, right? And it doesn't say that I have a certificate of divorce. It says I am unmarried. And then the question is, was there fraud in, I mean, for example, I take it that if he had bribed the Lebanese clerk to get the certificate, it wouldn't make any difference from your point of view. No, well, I think that there could be divorce fraud if there was fraud in obtaining a divorce. But I think that it's black and white if somebody's married or not married. For example, Brad Pitt and Angelina Jolie, just like my clients, have six children. They, you know, take lavish vacations together. They have a charitable foundation with commingled funds together. The paparazzi documents their family togetherness. And yet, Brad can't sponsor Angelina for a green card because they're not married. So it's just, it's not. Isn't there a lot of stuff about common law status and Ghanaian tribal marriages? If they claimed a Hollywood tribal marriage. I don't think that would work. But, so what I'm saying is that it's black. Now, for example, my client in the proceedings has a burden of clear and beyond doubt to show he's inadmissible. There's no guidance in, like, the regulations have, you know, six different categories of evidence to prove bona fides of a marriage. There's no guidance to say how you prove the guidance of an unmarriage, how you prove the realness of an unmarriage. So clear and beyond doubt, that's kind of, I think, approximating or exceeding criminal proceeding standards of beyond a reasonable doubt. So... Can you remind me something? I just want to make sure I'm grasping from the record. So you were making the point that it was a, quote, legitimate divorce in terms of the paperwork. So just what exactly happened? Tell me exactly how the divorce became formalized. They had a divorce, a Lebanese divorce, which is unquestioned by the immigration judge. And that's accepted by the board and the judge as a legally... What does that mean? They had a divorce. But what does that mean? Did they file a paper? Does someone stamp something and say you're now not married? Oh, I don't know what the process is in Lebanon. So we have to accept this case that another country says they're divorced? No, the immigration judge said that they had a valid divorce. No, wait a minute. He can't have said they had a valid divorce if he says it's a sham divorce. Well, he said that the divorce was legal, but that it was, in other words, that it went through the proper way. What you mean to say, I think, is that... The documents were valid. It was viewed or accepted as being a facially valid process. Yes. Is that correct? Yes. It appears to be, on its face, a valid, validly obtained, and notarized, or whatever, divorce. Just like if somebody had a marriage and they went to the justice or the peace or a clergy and they had a marriage license that was legally valid, but then they could not prove that they were living together, that they had joint funds, that they didn't have children together, they didn't have any third parties giving affidavits attesting to the realness of their marriage. So they might have a legal marriage, but that it was a marriage entered into for the purpose of evading the immigration laws. I guess that what the judge was saying was that it was a legal divorce, but it was a divorce entered into for the purpose of evading the immigration laws. But we don't have any documents. We don't even know what happened or what that means from Lebanon's perspective. I guess, as Judge Cleland said, on its face it appears to have happened. In other words, what the immigration judge found was that there wasn't a problem in the legality of the divorce in Lebanon. The problem was that it was entered into for the purpose of evading immigration laws. For the purpose, in other words, of perpetrating a fraud. Exactly. Is it more understood now? Did you really want to say exactly to that question? I'm saying, no, he's clarifying. I'm not saying he entered it for the purpose of evading. I'm saying that's what the judge found. And with respect to that, isn't that, to the extent that you were making some headway, it was there's no such concept as sham divorce, blah, blah, blah. But to the extent that the question is, did he enter into it for the purpose of evading the laws and make representations, certainly he made lots of other representations, that may not have been true. Isn't that for the purpose of evading the laws? What I'm saying is that the specific item of divorce is not, is something that, it's black and white, either you're divorced or you're not divorced. And that there's no such thing as a sham divorce. Now, what's really strange is that there is a BIA precedent called al decodal era. I've got that. Which the board doesn't even cite to. They're not relying on that. And the respondent doesn't rely on that. But I am telling you that it exists because I'm an officer of the court. I don't think that's a valid. I had it. I appreciate your doing it. I don't think that's, and it's in my brief. I don't think, and it was in all my briefs. So I'm telling them I think that there's a problem with this precedent, and they don't even talk about it. And the reason that, and the logic of that precedent, which I'm the only one talking about, is it relies on tax cases, which I'm not a tax lawyer. I should have asked my husband. He's a tax lawyer. I suppose that in tax proceedings the burden of proof that the taxpayer has is not clearly beyond doubt that it's something lower than that. This would help me. So in the sham marriage setting, okay, the way this, tell me if this is the way it works. Two people can get married in a way that, say, Lebanon recognizes, or for that matter this country recognizes. So you get the paperwork right. You do everything you're supposed to do. So in law you're married. But if people find out that, well, yeah, but you didn't do this because you love each other or for the traditional reasons for getting married. You only did this to evade the immigration laws. You would agree with that area of the law. It's fine to say you're not married for immigration purposes. Yes, because Congress wrote a statute that says that. But now I answer Judge Bonk's question. I mean, that's what leads to Judge Bonk's question that, well, you know, you said you had the status of unmarried, but yet you obtained it, at least according to the fact findings, you obtained it not because of the traditional reasons for getting a divorce. You don't love each other anymore, whatever. No, you were trying to evade the immigration laws. Well, I think that Congress did not, they could have said you can't have marriage fraud and you can't have divorce fraud. They only said that you can't have marriage fraud. And I think the problem is how do you prove that your divorce is real? Are you saying that because they didn't write regulations about the term unmarried? I mean, there are lots of terms in the statute that may not be defined by other regulations. I mean, I was just looking at sons and daughters. These days, you know, if you are the surrogate mother, is this a son? If you fraudulently claim to be a surrogate mother because they haven't made regulations about sons and daughters to define those, you can't have fraud? Granted, regulations help, but they still are able to look at the words and see if you are fraudulently trying to get into that category. I don't think that people really do, I don't think there's a problem of sham divorce. I think that's a great point. In fact, we need more sham divorces, right? That would be a great solution for immigration purposes. If only we were having real marriages and only sham divorces. As with everything in the immigration law, in some parts, being married is better than being unmarried. In other parts, being unmarried is better than being married. I did a research, a search term. I have a very limited Lexis. All my clients are poor. I have almost no resources. So I digested on that word, the name of that case, Aldo Conolara, and I only got four hits. One was the case itself that you have in your hand. One was one unpublished BIA decision that cited it. One was a law review article about anomalies and acquired naturalization that happens to mention it. And the other was a Fifth Circuit case that was about employee benefits and they were seeking to invoke the doctrine of sham transactions. And they said, oh, and look, they even have it in immigration law and they cited this precedent. And this is a precedent from 1983. Well, if we publish this case, more people may find out about it. It may be that sham divorces are sufficiently successful. Well, I'll tell you something. The reason that I think Congress legislated sham marriages is because there's no quota on U.S. citizens sponsoring, you know, a spouse. And you immediately get a green card. But for unmarried sons and daughters over 21, it's a tiny – the quota is chronically backlogged. Right now they're working on cases from 2006. And there's no great motivation to run out and get divorced and then wait 10 years. And, in fact, for Mexico, it's, I think, 94 that they're working on. These folks seem to have done okay. All right, Counselor, you have your time for rebuttal. Thank you so much. We're ready to hear from the government. May it please the Court. Tim Remins on behalf of the United States Attorney General, Eric H. Wilson, Jr. In this case, the Court discussed the reclining of the sham divorce. And it seems the Court is concerned in what was previously discussed as whether or not – or the petitioner agrees – whether or not sham divorce exists under the Immigration Law. And the Court noted it's not so much whether a sham divorce specifically exists but whether or not there's a material representation to procure immigration benefit. In this case, substantial evidence overwhelmingly supports that finding that the petitioner has not gauged a bona fide divorce but rather gauged a divorce solely to render himself eligible for a visa petition. Counsel, let me ask you this. If it were a legitimate divorce in the sense that, look, honey, I want to go to the U.S., goodbye, I'm going to Baghdad until I can get in, doing it solely to get the – but you're telling the truth. I mean, you left, you're not doing anything, you haven't seen them, whatever. Is simply doing it to procure immigration status a barrier? Yes, well, in your example, would there be a continuation of the marital relationship? No, no, I mean, he says, look, I love you, but I'm gone, I'm not coming back. I love America more than I love you. Well, in that example, it sounds like it wasn't solely entered into for the purposes of obtaining a petition, that there also was a relationship failing involved. No, no, my example is, I would very much like to stay married to you, but I love America more. I mean, I'm just trying to distinguish between the statement that several of us, including me, have used solely to procure status and the misrepresentations in doing so. I mean, at least so far, I'm with you that the misrepresentations as to being unmarried may be actionable. I just wanted to either get you to give me a citation or to back off from the solely to procure part. Well, a citation is just a decent statute. And also, interesting enough, the case of a petitioner discussed with the court previously, that board decision matter of Aldecatalara, I'm probably mispronouncing that, it discusses why there is such a thing as a sham divorce in these types of circumstances. It discusses the preference categories that Congress created for married versus unmarried children evolved from the residence. Residence. Residence. It discusses why there is an open list of the history of the IAA, why Congress provides these certain preference categories, and why a petitioner, like Mr. Lobby, should not be allowed to circumvent these preference categories by obtaining, as divorce, just to render itself eligible for a visa petition. There's preference categories for unmarried children versus married children because there's an assumption that unmarried children are still part of the nuclear family, as the board discusses in that petition. That's why they have, there's more of an interest, Congress has more of an interest in keeping family unity for unmarried children. Married children seem to have their own family. Although, I mean, as a factual and legal matter, if the person is 45 years old and has been living with his mistress in Kuwait for 10 years and is honestly unmarried, they would still get the preference, wouldn't they? If they're unmarried? Yeah. He's left the family, because you're talking about, well, there's a purpose for family, whatever. He's got a different mistress every month. There's nothing in the requirement, you're talking legislative history, there's nothing in the requirement that you go back to your family's village, right? There's no requirement. Congress is trying to legislate in the interest of family unity. And these are just the reasoning behind their decision and why it should not be, why is also statute prohibiting immigrants from circumventing these preference categories by misrepresenting their status. Okay, back to where we started. So, counsel, if you can have a... I think this is a variation on Judge Boggs' question. If you can have a sham divorce, can you have a sham non-marriage? So I think that's a variation on the question he just asked. In other words, you have two people that love each other, they have children together, they spend all their time together, they vacation together, there are no mistresses, there's no nothing. But they're just not getting married to exploit this hole in the immigration law. So it's a sham non-marriage. I suppose it could. It would still be a material misrepresentation. But they really didn't get married. I mean, there is... It's not like... What would be the benefit in that situation? In order for them to be unmarried? To be unmarried, to be unmarried. So they would just, instead of... In Mr. Boggs' situation, are you forced to render yourself eligible? Well, they are eligible, but they abstain from divorce. They abstain from marriage. It's a, quote, sham non-marriage. I mean, everything about this couple indicates they would marry, but for one thing, they want to evade, they want to exploit the immigration law. The fact in that case shows that the only reason they abstain from divorce, it would be similar. Not from divorce, but from marriage. Sorry, I keep confusing myself. If they abstain from marriage solely to render themselves eligible, it would be, it could be considered a misrepresentation, but... Oh, so now we're going to have a sham non-marriage doctrine? Right, I'm not sure in that situation, because what they're misrepresenting is very vague at that point. I'm not sure it would work. In this case, it's much more clear. He's misrepresenting his divorce. That's a legal document he obtained solely to render himself eligible for a visa. That's on paper, and not a bona fide divorce. I really got to tell you, I'm not sure I'm getting that. We don't know what the paper is, right? Well, as the petitioner stated, or as the counsel stated, the immigration court accepted the divorce decree as a legitimate, legal divorce. That's not an issue. They accepted there was a legitimate, legal divorce, just like a marriage can be legally on paper and still not be bona fide for immigration purposes. They had a legal divorce, but it was not bona fide for immigration purposes. It's a flip side of the coin, where it's still done just to secure an immigration benefit. Well, I mean, I'm sort of with you, and then I'm not with you. The question of sham versus for the purpose of seems to me can go either way in both ways. Let's take an example of a marriage where you go and get the piece of paper, but you never consummate, you never live together, you never provide any support, all of those indicia, and you don't do it for immigration purposes, but later on it turns out to be useful. That probably still is a sham, regardless of whether it's done for immigration purposes or not. Isn't it? Because it's not a marriage that fulfills either the regulations or a reasonable definition of marriage. Is that a fair statement? That's a fair statement. And your example also later on becomes beneficial for immigration benefits. Yeah, I mean, lots of times people go to Vegas and they wake up married. They didn't think they were when they got drunk the night before. Yes. In all these cases, it's only left to the adjudicator in this case to assess the facts. And in this case, the adjudicator and the immigration judge found that Mr. Bosley failed to carry his burden of showing clearly beyond doubt that he's not misrepresenting the status of Whitney's burden of proof in place. It's only left to the adjudicator to assess the facts and find out if there was a material misrepresentation in this particular case or these particular circumstances. Okay, but again, the connection here, I'll accept to this point that there were material misrepresentations and they were with respect to the being unmarried. You've got to tie it to the immigration laws or regs somehow, don't you? I mean, if the guy says, you know, I'm a military decorated combat pilot and it's got nothing to do with whether he's an unmarried son, then that doesn't hurt, right? It's got to be relevant to something. I understand, and there is overwhelming record of evidence tying his misrepresentation to the immigration judgment to be misrepresentation. As the immigration judge and the board cited, there's very inconsistency in testimony regarding the circumstances of divorce, why they got divorced, how did the phone call from Katty Bobby concerning the divorce was a sham, yet all these facts add up, saying there's no other reason for the divorce in this case, at least on the record, no other consistent reason to renew the entity's finding that it was a fraudulent divorce only to render Mr. Bobby eligible for a visa petition. The testimony did not consistently explain why they obtained the divorce. It was not for a visa petition. He at first stated that they divorced because his ex-wife did not want to move to the United States with the children. Then a few years later, his ex-wife seeks her own visa petition and expects to move the children to the United States. And the testimony reflects that with an inconsistency in his view, I believe that... Given that, now that you've brought it up, can a single divorce be a sham on one side and not a sham on the other? You're referring to the petition's argument that the special government is collaterally estopped? I'm not saying collaterally estopped, I'm just... No, I'm not buying that argument, but I'm saying if the question is the shamness of a transaction, can it be a sham on one side and not a sham on the other? Or are you saying that the fact that the first pitcher winged one past you doesn't mean the second pitcher gets to wing the same one past you? Well, as I already stated, when we have facts such as these about whether or not there were two different cases of immigration, it's going to be fact specific. We have Mr. Baumann's facts. We do not have the facts in the next wife's case and what she told the adjudicators to adjust her status. If in fact she's admitted to a sham divorce even and filed a waiver under 172I at the time, we don't know anything that happened there. Or if she just gave them the piece of paper and they asked her no questions, she told them no lies. It could be that too, because again, adjudicators weigh facts differently in different ways. It's not relevant if we don't have any knowledge of her proceedings. But otherwise, we've talked about the inconsistencies. I'm going to pass the transcript, but there are inconsistencies that have to do with the allegation of divorce fraud. So unlike other cases where there's maybe nothing specific, we have a specific allegation of divorce fraud which was credited by the embassy. And then later on, when that person, Kathy Bozzi, tried to retain her allegation of divorce fraud, saying the divorce was only, she specifically said the divorce was only to enter into for immigration purposes, she could not consistently retain that allegation. She discussed the taxi cab ride that spun up and over. Answering briefs where she said she went with Mr. Bozzi to the embassy. Counsel, while we're talking about that proposition, in the BIA decision, it refers to a letter from Kathy Bozzi. Is that just a mistake? Everything I found in the record was either a phone call or a physical conversation. I believe what the board is referring to was Mr. Kathy Bozzi's affidavit she filed with the Immigration Court. Aha, okay. Later on. That's with the Immigration Court, not back in Israel. Correct. Okay, thank you. That helps. Go ahead. The affidavit she filed before she appeared for the Immigration Court stated that she resented her allegation of divorce fraud and said their husbands were up to it. The affidavit said that was the sum total of it. No Counsel, I didn't know that you're not on the same page then. Page 2 says Kathy Bozzi submitted a letter to the embassy indicating the respondent was misrepresenting the fact that he was divorced. See Exhibit 5, tab D at 11. I have not looked that up, but there was no letter to the U.S. Embassy, was there? No, there was not. Okay, thank you Counsel. The affidavit is either pointing to the embassy's decision or the affidavit Kathy Bozzi filed. Okay, thank you Counsel. But, again, there's also, my time's wrapping up, but anyway, Kathy Bozzi's testimony is inconsistent. She did not place herself in Lebanon according to her passport date. She also did not her affidavit stated that she made the assumption that her testimony in her affidavit did not say that. There's just nothing to cast out reliability of a previous phone call that asserted divorce fraud. But in sum, substantial evidence supports the agency's finding that Mr. Bozzi failed to carry his burden of proof to show that he did not misrepresent that material fact of divorce fraud. I understand there are courts' concerns about whether or not a divorce fraud finding is something that exists under the INA, but it clearly does. Anyone who misrepresents a material fact in order to secure an integration benefit is invincible. In this case, it's found to be invincible because he divorced his ex-wife solely to secure an integration benefit. There's substantial evidence, all the evidence points to that. He never pointed to anything consistently that was due to divorce finding. Okay, thank you Counsel. Ms. Liss, you have three minutes for rebuttal. Well, I guess the first thing I want to say is that I don't think that he misrepresented the material fact is that he is divorced and he didn't misrepresent the fact that he was divorced. So, I want to I'm not going to go through all of the facts about Kathy Bozzi and the house visit, but I would I just want to say in rebuttal that the house visit was 23 years after the divorce and the agents themselves each of them, and I left out one site in my brief, I only had AR 535 in my brief, but the other agent also said I don't know if it's specific I don't know if it would specifically indicate whether or not a divorce was legal or sham, but it indicates that they still have a continuity of relationship. I mean, let's say they had gotten back together and reconciled. You know, that wouldn't mean that 23 years ago they had a sham divorce. I don't really think that there's any probativeness to the 23 years later visit. And the first agent also said, I don't know that I can make a conclusion, I really can't, I can't assume he lives there or not. From what I saw that day, I can't make a conclusion. So the agents are like the experts they're investigators, and both of them said that they can't make a conclusion that it was a sham divorce. And yet the board relies on that. And no reasonable trier effect would rely on something where the two agents investigating say that they can't make the conclusion that the board is making. When you talk about the 23 years, you raise a certain good point, or a point, I'm not sure it's a good one, is that if in these proceedings or in talking to the agents and all those things, if they're lying through their teeth but they were telling the truth back in Israel, does that mean everything they do now is irrelevant? That we really shouldn't look at any of this data except insofar as it reflects on the truth back in 89. I don't think that any of the later data is relevant. Any of the you know, more current data. Where his pants are, where his pills are, that sort of thing. Right. Why isn't it supportive of what happened in 89? Because in the interim, they lived in separate countries for many years. He lived in New York and had a mistress for many years. They never conceived, in my brief I made a mistake. I said they never had more children. I meant they never conceived more children. In her bedroom, they were not sleeping together. They were twin beds. Presumably they weren't sleeping in one bed. In a twin bed. I don't think that that is substantial evidence reflecting on the genuineness of the divorce that took place 23 years ago. Okay, thank you, counsel. An interesting case. That case will be submitted. Thank you. We have a large number of cases on briefs. All those remaining cases will be submitted. And you may adjourn court. Mr. Ramnitz, you can hang up now.